UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

MITCHELL CASPER, also known as
   "Lenny,"

         Defendant.

- - - - - - - - - - - - - - - - X

I N F O R M A T I O N

Cr. No. 07-570 (NGG)
(T. 18, U.S.C., §§ 1962(d),
1963, 2 and 3551 et seq.)

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

The Enterprise

1. The members and associates of the Bonanno organized crime family of La Cosa Nostra (the "Bonanno family"), also known as the Massino family, constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact. The Bonanno family engaged in, and its activities affected, interstate and foreign commerce. The Bonanno family was an organized criminal group that operated in the Eastern District of New York, other parts of the United States and Canada.

2. The Bonanno family operated through groups of individuals headed by "captains," who were also referred to as "skippers," "caporegimes" and "capodecinas." These groups, which were referred to as "crews," "regimes" and "decinas," consisted

of "made" members of the Bonanno family, also referred to as "soldiers," "friends of ours," "good fellows" and "buttons," as well as associates of the Bonanno family.

3. Each captain was responsible for supervising the criminal activities of his crew and providing crew members and associates with support and protection. In return, the captain received a share of the earnings of each of the crew's members and associates.

4. Above the captains were the three highest-ranking members of the Bonanno family. The head of the Bonanno family was known as the "boss." He was assisted by an "underboss" and a counselor, who was known as the "consigliere." With the assistance of the underboss and consigliere, the boss was responsible for setting policy, resolving disputes between members and associates of the Bonanno family and members and associates of other criminal organizations, and approving significant actions taken by members and associates of the Bonanno family, including murder.

5. The boss, underboss and consigliere of the Bonanno family, who were sometimes referred to collectively as the "administration," supervised, supported, protected and disciplined the captains, soldiers and associates and regularly received reports regarding the activities of the members and associates of the Bonanno family. In return for their

supervision and protection, the boss, underboss and consigliere received part of the illegal earnings of each crew.

      6. The Bonanno family was part of a nationwide criminal organization known by various names, including the "mafia" and "La Cosa Nostra," which operated through entities known as "families." The ruling body of this nationwide organization was known as the "commission," the membership of which at various times has included the bosses of the five New York City-based families, to wit: the Bonanno, Colombo, Gambino, Genovese and Luchese organized crime families. For a period of time, the boss of the Bonanno family was removed from membership within the commission.

      7. From time to time, the Bonanno family would propose a list of associates to be "made," that is, to become members of the Bonanno family. The list would be circulated to the other families based in New York City. Upon becoming "made," each member would take an oath of "omerta," vowing never to reveal any information about the Bonanno family, its members or associates.

<u>The Purposes, Methods and Means of the Enterprise</u>

      8. The Bonanno family constituted an ongoing organization, whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The principal purpose of the Bonanno family was to generate money

for its members and associates. This purpose was implemented by members and associates of the Bonanno family through various criminal activities, including arson, credit card fraud, drug trafficking, extortion, kidnapping, illegal gambling, interstate transportation of stolen goods, loansharking, and robbery. The members and associates of the Bonanno family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9. Although the primary purpose of the Bonanno family was to generate money for its members and associates, the members and associates at times used the resources of the Bonanno family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the Bonanno family. For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10. The members and associates of the Bonanno family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities. That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11. Members and associates of the Bonanno family often coordinated street-level criminal activity, such as drug trafficking, illegal gambling, loansharking, extortion, and robbery, with members and associates of other organized crime families.

The Defendant

12. At all times relevant to this Information, the defendant MITCHELL CASPER, also known as "Lenny," was an associate within the Bonanno family.

COUNT ONE
(Racketeering Conspiracy)

13. The allegations of paragraphs one through twelve are realleged and incorporated as if fully set forth in this paragraph.

14. On or about and between November 1, 2000 and April 14, 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MITCHELL CASPER, also known as "Lenny," together with others, being a person employed by and associated with the Bonanno family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title

18, United States Code, Sections 1961(1) and 1961(5).

15. The pattern of racketeering activity through which the defendant MITCHELL CASPER agreed to conduct the affairs of the enterprise consisted of the racketeering acts set forth below as Racketeering Acts One and Two. The defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

### RACKETEERING ACT ONE
(Illegal Gambling - Sports Betting)

16. On or about and between November 1, 2000 and April 14, 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MITCHELL CASPER, together with others, knowingly and intentionally conducted, financed, managed, supervised, directed and owned all or part of an illegal gambling business, to wit: a sports betting business, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05, 225.10(1) and 20.00, which involved five or more people who conducted, financed, managed, supervised, directed and owned all or part of the business and which remained in substantially continuous operation for a period in excess of thirty days and

had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955 and 2.

## RACKETEERING ACT TWO
(Extortionate Collection of Credit Conspiracy)

17. In or about and between January 2001 and December 2002, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the defendant MITCHELL CASPER, together with others, knowingly and intentionally conspired to use extortionate means to collect and to attempt to collect extensions of credit extension of credit from John Doe #1, an individual whose identity is known to the United States Attorney.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: [signature]
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136